## STATE OF NORTH DAKOTA, Respondent, v. MAX YOUNG, Appellant.

### (212 N. W. 857.)

**Criminal law — mistrial equivalent to no trial.**

1. "Mistrial" is equivalent to no trial, and cannot be predicated on the opening statement to the jury merely because the state's attorney relates what he expects to prove.

**Bill of particulars — criminal cases — defendant not entitled to bill of particulars.**

2. The defendant in a criminal case has no constitutional or statutory right to a bill of particulars, and for reasons stated in the opinion it is *held* the court did not err in denying defendant's demand for one.

**Witnesses — limitation of cross-examination of witnesses.**

3. The limitation of cross-examination is within the sound discretion of the trial court, and it is no abuse of such discretion to sustain objection to defendant's demand for another rehearsal of her story by the prosecuting witness

Annotation.— (3) Conduct of cross-examination of witness largely in discretion of trial court, see 28 R. C. L. 599; 3 R. C. L. Supp. 1585.

(5) Variance between pleadings and proof in prosecution for rape, see 22 R. C. L. 1230.

(6) Question for jury as to credibility of witness, see annotation in 46 L.R.A. (N.S.) 1030; 8 A.L.R. 815; 28 R. C. L. 657; 3 R. C. L. Supp. 1589; 4 R. C. L. Supp. 1835; 5 R. C. L. Supp. 1551; 6 R. C. L. Supp. 1739.

(8) Forgotten facts not newly discovered evidence warrant new trial, see 20 R. C. L. 293.

when she has already related it in full both on direct and cross-examination, and is asked to tell it over again, "the same as you did before."

**Criminal law — witnesses — state's attorney competent witness.**

4. The state's attorney is a competent witness for the impeachment of the defendant to relate a conversation with the defendant on a matter relevant to the issue when the defendant has denied such conversation.

**Rape — force and violence — pleading and proof.**

5. There is no variance between the pleading and the proof in a prosecution for rape of a girl under the age of consent, merely because the evidence shows force and violence were employed by the defendant at the time of the commission of the offense.

**Criminal law — credibility of witnesses — morals of witness — credibility for jury.**

6. The trial court properly refused to give a requested instruction to the effect that in determining the credibility of the complaining witness the jury may take into consideration her morals "in determining the weight and credit you will give to her." A trial court has no right to single out any witness as the subject for special caution regarding credibility. Cautionary instructions should be applicable to all witnesses alike, and it is not the province of the court to single out any witness and by special instructions intimate an opinion as to the credibility. The credibility of witnesses is for the jury alone.

**Criminal law — jury sole judge of facts in criminal case.**

7. The jury is the sole judge of the facts in a criminal case, and where testimony is such that reasonable minds may believe charge alleged in the information has been proven, the verdict of the jury is conclusive as to its sufficiency.

**Criminal law — newly-discovered evidence not ground for new trial.**

8. Evidence forgotten or otherwise overlooked is not the "newly discovered evidence" required as a basis for a new trial; and merely impeaching testimony is not ground for a new trial.

Opinion filed March 15, 1927.

Criminal Law, 16 C. J. § 1464 p. 715 n. 3; § 2226 p. 890 n. 45, 46; § 2290 p. 929 n. 86; § 2291 p. 930 n. 93; § 2336 p. 954 n. 56; § 2439 p. 1014 n. 56, 57; § 2479 p. 1039 n. 84 New; § 2712 p. 1185 n. 30; p. 1186 n. 37; § 2729 p. 1202 n. 70; § 2730 p. 1206 n. 95; 17 C. J. § 3593 p. 254 n. 51. Indictments and Informations, 31 C. J. § 173 p. 654 n. 20; § 179 p. 659 n. 72; § 238 p. 693 n. 16; § 308 p. 750 n. 50; § 400 p. 818 n. 96. Mistrial, 40 C. J. p. 1229 n. 4. Rape, 33 Cyc. p. 1452 n. 6; p. 1486 n. 12. Witnesses, 40 Cyc. p. 2512 n. 43; p. 2514 n. 48; p. 2528 n. 34; p. 2529 n. 36; p. 2690 n. 97.

Appeal from the District Court of Stutsman County, *Jansonius,* J. Affirmed.

*P. W. Lanier,* for appellant.

*Geo. F. Shafer,* Attorney General, and *Russell D. Chase,* for respondent.

BURR, J.   The defendant was convicted of the crime of rape in the first degree and sentenced to serve six years in the penitentiary.   His fourteen specifications of error may be arranged in eight classes; denial by the court of defendant's motion for a mistrial and continuance at the conclusion of the state's attorney's opening statement to the jury; denial of defendant's demand for a bill of particulars; unduly restricting the cross-examination of the prosecuting witness; permitting the state's attorney to testify as to an alleged admission made by the defendant; duplicity of the information or variance between the pleading and the proof; refusal of the court to give a requested instruction; insufficiency of the evidence to sustain the verdict; and denying defendant's motion for a new trial.

Defendant says the court erred in denying his "motion for a mistrial and continuance."   Counsel for the state in his opening statement to the jury apparently detailed what he expected to prove regarding some force and violence applied to the prosecuting witness in pulling her out of the car; and counsel for the defense immediately moved the court for a mistrial and continuance on the ground that the information stated what he called "statutory rape" and made no allegations regarding force and violence, whereas the state intended now to prove force and violence.   There was no mistrial and no showing for a continuance. This motion was properly denied.   "Mistrial" is equivalent to no trial. Baird v. Chicago, R. I. & P. R. Co. 61 Iowa, 359, 13 N. W. 731, 16 N. W. 208.   The case of Sonnesyn v. Akin, 14 N. D. 248, 262, 104 N. W. 1026, shows what a mistrial is.

After the arraignment and before entry of plea, defendant demanded a bill of particulars, in which he asked for the specific place where and time when, whether night or day, said alleged rape was committed. The information in this case gave the time and place, stating that the offense took place July 17, 1926, in the county of Stutsman.   In this state the defendant in a criminal case has neither a constitutional nor

a statutory right to a bill of particulars, and our Code makes no provisions for any such demand. Section 10,685 of the Code requires the information to contain "a statement of the acts constituting the offense, in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended." Section 10,686 says the information "must be direct and certain as regards the particular circumstances of the offense charged, when they are necessary to constitute a complete offense." Section 10,737 of the Code gives the defendant the right to demur to the information when it appears upon the face thereof "that it does not substantially conform to the requirements of this Code." If the facts stated in the information were not sufficient to apprise the defendant of the charge against him so as to permit him to prepare his defense, then the defendant should have demurred to the information. No demurrer was interposed. Having failed to demur to the information on this ground he waived it. See § 10,745 of the Code. The defendant relies upon the case of State v. Empting, 21 N. D. 128, 128 N. W. 1119, in his demand for a bill of particulars. This court did not say in such case that the defendant was entitled to a bill of particulars. In fact, the court specifically refused to pass upon the point of whether "a demand for a bill of particulars in a criminal case is ever permissible in this state." There are states which have constitutional or statutory requirements allowing a bill of particulars such as Massachusetts. See Com. v. Snell, 189 Mass. 12, 3 L.R.A.(N.S.) 1019, 75 N. E. 75. Again in other states where there are no constitutional or statutory provisions, granting or refusing a bill of particulars in a criminal case is held to be purely a discretionary matter with the trial court. See Du Bois v. People, 200 Ill. 157, 93 Am. St. Rep. 183, 65 N. E. 658. There was no error in the trial court's refusal to grant the demand.

The defendant alleges the court erred in unduly restricting the cross-examination of the prosecuting witness. Counsel for the defense asked the prosecuting witness this question: "Will you please tell this jury, in your own words, what happened when Paul Kubeck and Max Young came out there that evening. Just tell it to the jury the same as you did before." The state objected to this as repetition and the court sustained the objection. This will be found on page 26 Tr. The record shows, page 9 Tr., that on direct examination the prosecuting witness

detailed fully all of the incidents connected with the alleged crime. On cross-examination counsel for the defendant asked the prosecuting witness this question, "Will you please tell the jury again just what happened there, from beginning to end, just like you told it before." '(page 17 Tr.) In response to this question she again related all of the incidents which she said took place at the time of the commission of the alleged offense to which counsel for the defendant responded by saying, "That is very good. It is almost exactly like you told it here a few moments ago." Shortly afterwards he again asked her to repeat in the manner of the question ruled out. There was no error in this. The question of the cross-examination is a matter within the sound discretion of the court and useless repetition should be stopped. She had already answered his question, been interrogated by him fully in regard to the matters which are said to have taken place and there was no reason shown why she should have been compelled to state these facts over again.

The defendant says the court erred in permitting the state's attorney to answer the following question, detailing a conversation he had with Max Young: "What was then and there said in connection with that matter?" Answer: "I said to him, 'Max, now on the square, how many times did you get next to this girl, referring to Florence Moran? And he said, 'just once.'" Defendant says this purports to be a confession coming from the defendant, without any proper foundation laid. This testimony was offered in rebuttal. There was no error in permitting this. The defendant had denied making this statement to the state's attorney and made no attempt by preliminary examination of the witness to establish grounds for excluding a confession. It was not an attempt to relate a confession claimed by the defendant to have been obtained from him by duress or promise. It was an impeachment of the defendant. The prosecuting witness stated there was only one act of sexual intercourse and all of the witnesses who claim to have heard the defendant brag about it stated he said he had had intercourse with her once. He denied all this and denied admitting to the state's attorney he had one act. The State had a right to contradict his denial.

The grounds of alleged variance and duplicity are clearly untenable. The defendant says the information charged statutory rape and that the proof offered was of two offenses, to wit: "rape without force and

violence, and rape with force and violence." He claims the state offered proof as to both offenses. Certainly the information is not duplicitous, and if it were this objection should have been taken by demurrer. The information states one offense—intercourse with a girl under the age of consent—but the proof shows that in having this intercourse "defendant used some force." This does not constitute a variance in the pleading and proof. The undisputed facts show that at the time of the commission of the alleged offense the prosecuting witness was fifteen years of age and the defendant was thirty-nine. In detailing the facts prosecuting witness told how the defendant "pulled her from the car and threw her on the ground." When she was stating these facts there was no objection on the part of the defendant and on cross-examination she was again asked the same question. Counsel had a right to elicit all relative facts that were material. These were part of the res gestæ. The jury had a right to know what took place and how the offense was committed. The fact that the defendant used force does not in any way affect his guilt in having intercourse with a girl under the age of consent.

Defendant says the court erred in refusing to give the following instruction: "The court instructs you that, in determining the credibility of the testimony of Florence Moran, you may take into consideration her morals; that is to say, you may take into consideration the fact that she has had sexual intercourse with men other than the defendant, if you find this to be a fact, in determining what weight and credit you will give to her testimony on the trial of this case." The record shows the prosecuting witness admitted having had intercourse once with a person other than the defendant. The only testimony in the record as to anyone having sexual intercourse with her is her testimony of one act with the defendant and one act with this other person. The defendant relies upon the case of State v. Apley, 25 N. D. 298, 48 L.R.A. (N.S.) 269, 141 N. W. 740, as authority for his position. This case is not applicable. It deals with the refusal of the court to permit cross-examination of the prosecuting witness for the purpose of showing immorality and unchastity generally. The court did not refuse permission to examine her along these lines. No objection was offered by the state to this line of examination and the defendant did examine her with reference to these matters. In the case cited this court held

it was proper to permit such cross-examination as bearing upon her credibility as a witness even though it was a case where the prosecuting witness was under the age of consent. There is strong authority for the position that "the reputation of a woman for chastity affects only her credibility on the question of consent and the jury should be so instructed." See Freeman v. State, 52 Tex. Crim. Rep. 500, 107 S. W. 1127. Under the undisputed facts in this case consent is immaterial but there was no restriction of cross-examination. The defendant says the court should have given a special instruction singling out this witness. Instructions on the credibility of witnesses should apply alike to all witnesses whether they are for the prosecution or for the defense. 16 C. J. 1014. The general rule is that in the absence of special circumstances the court should not single out the witness of either the state or the defendant to give special instructions regarding thereto. There is no reason why the court should be unjust to the State in singling out witnesses for the State and cautioning specially with reference to them any more than witnesses for the defendant. In this case the court did charge the jury that "you may take into consideration the character and appearance of the witnesses as exhibited to you in the trial," in passing upon the credibility of any witness. The character of the prosecuting witness had been shown and any immorality or unchastity had been described; but the jury was also charged to take into consideration "everything you have observed in his or her demeanor upon the witness stand."

Under our statute, § 10,822, the court may "only instruct as to the law of the case in his charge to the jury." Section 10,863 required the court in charging the trial jury "to state to them all matters of law which it thinks necessary for their information in giving their verdict." True, the same section says if it states the testimony of the case "it must in addition inform the jury that they are the exclusive judges of all questions of fact." This, however, does not permit the court to give expression to its view upon the credibility or the weight or effect of the testimony of any witness. See State v. Barry, 11 N. D. 428, 92 N. W. 809. Neither has the court the right to give any intimation as to what it may think is the degree of credibility to be attached to any specific witness. State v. Peltier, 21 N. D. 188, 129 N. W. 451. To single out the prosecuting witness and caution as to her testimony is

merely a subtle way of intimating what the court might think in regard to her testimony. It will be noticed that this differs from a case where the prosecuting witness is an accomplice, as in an adultery or incest case. In such a case it is perfectly proper for the court to lay down the law in regard to the corroboration of an accomplice where the statute requires corroboration. But that is not singling out a witness or giving an intimation as to the weight. The accomplice might impress everyone as being truthful, and yet if the statute required corroboration, such corroboration would need to be forthcoming. The credibility or incredibility of the witness would be merely incidental. And even in the case of corroboration the question of the credibility of the accomplice is purely a matter for the jury. The case of State v. Apley, supra, does not touch this point because that was dealing with the question of the scope of the cross-examination. The request asked of the court would have amounted to an intimation that the court had formed an opinion as to whether or not the prosecuting witness was worthy of full credit. In the case of People v. Hoosier, 24 Cal. App. 746, 142 Pac. 514, a statutory rape case, the supreme court says the trial court properly omitted to charge the jury to carefully scrutinize the testimony of the prosecutrix. In addition, it was complained the court did not instruct the jury to carefully scrutinize the testimony of the accomplice, and the court says: "In the first place such an instruction would involve an invasion of the constitutional province of the jury to determine for themselves the weight and effect of the evidence. Such an instruction has often been given in rape cases and just as often has the constitutional inhibitions against instructions by the trial courts upon questions of fact been ignored." (p. 519.) It is true there was no request for such an instruction, but the language of the court shows it would have been proper to have ignored such request. In the case of State v. Gaul, 88 Wash. 295, 152 Pac. 1029, the defendant requested an instruction that "if the complaining witness was of an immoral character and had been guilty of immorality or addicted to vicious habits or was prone to commit immoral acts, then, as a matter of law she might be presumed to have less respect for the truth and to be ready to perjure herself when it was to her interest to do so and that if the jury did not believe her it was their duty to disregard her testimony." The court said such requested instruction "was properly refused as

invading the province of the jury, and in view of the constitutional provisions that judges shall not charge with respect to matters of fact nor comment thereon but shall declare the law." In the case of Com. v. Pease, 137 Mass. 576, the prosecuting witness was the only witness for the state. He was the sheriff and was entitled to one half of the fine assessed as a penalty. The defendant requested the court, to instruct the jury "that it was not safe to convict on the uncorroborated testimony of a person who was the original complainant, the only material witness, the person who would be entitled to receive $50 in case of conviction, sentence, and payment of fine." The supreme court says, "the court properly left it to the jury to say to what extent his credit was affected by the fact that he was interested in the result of the case." In the case of People v. Gray, 251 Ill. 431, 96 N. E. 268, a conviction for the crime of rape was reversed because the court commented upon the testimony of the complaining witness to the extent of saying that even though the defendant had offered evidence concerning her general reputation for truth and veracity, "still if you believe from the evidence beyond a reasonable doubt that the complaining witness has testified truthfully as to all matters testified to by her then the testimony in this case concerning her general reputation for truth and veracity becomes wholly immaterial and need not be considered by the jury." The court held "the credibility of witnesses is a matter exclusively for the jury. It is the duty of the court to determine the competency of testimony, but never its credibility. That is for the jury." If the court was wrong in commenting upon her testimony because it favored the state then the court in this case would have been wrong in commenting on her testimony in favor of the defendant. In such a matter one side is not entitled to a comment any more than the other. The court must be impartial. In this Illinois case the court held "that the general reputation for chastity of the prosecutrix under the age of consent is immaterial." Of course, her reputation for truth and veracity would be material, but the court was not permitted to comment on it. In Strabel v. State, — Wis. —, 211 N. W. 773, where the defendant requested the trial court to charge specially regarding certain private detectives, who were witnesses, the court says: "The trial court properly refused to instruct that the jury should scrutinize the testimony of private detectives with care and caution. A court

should not select any single class of witnesses and tell the jury that their testimony alone is to be viewed with care and caution. The trial court discharged its duty by giving cautionary instructions that applied to all witnesses, and not to any particular class of witnesses or to any single witness." ·

As bearing upon the right of the court to comment on the weight to be attached to the testimony of the prosecuting witness, the recent case of Cobb v. State, — Wis. —, 211 N. W. 785, is illuminating as showing the court clearly draws a distinction between instructing on the weight to be given the testimony of the prosecuting witness when she is an accomplice, and in a case where she is merely the prosecuting witness in a statutory rape case. In this Wisconsin case the court held: "The refusal to give instruction as to credibility of witness and her father in a prosecution for statutory rape, to the effect that their testimony should be weighed with caution, held not error, where their testimony was strongly corroborated." This last phrase "where their testimony was strongly corroborated" was entirely unnecessary in that case because the prosecuting witness was not an accomplice, and was suggested because defendant had cited as authority a Wisconsin case where the court required instruction where the complaining witness was an accomplice, saying it was ordinarily unsafe to convict solely on the uncorroborated testimony of an accomplice.

There are several specifications dealing with the sufficiency of the evidence. The defendant says that "the verdict is against the evidence; the evidence preponderates against the verdict; the prosecuting witness is discredited by a preponderance of the evidence; that the corroborative testimony is so unreasonable that it is incredible." This is a sample of the objection leveled at the evidence in separate specifications. The prosecuting witness told how the defendant had sexual intercourse with her. He denied this. In corroboration of her testimony four witnesses testified that they heard him say that he had had sexual intercourse with her—the mother of the prosecuting witness, two disinterested witnesses, and the state's attorney. The defendant brought on the stand a young man who was claimed to have been with him when some of these admissions were made and this witness testified he did not hear them made. Thus there was a direct conflict in the testimony and the jury heard all of these witnesses. In addition the defendant admits

he sent for the father of the prosecuting witness and tried to settle the case by the payment of $500. He also, at the time he was arraigned, made in writing and filed an offer in open court to marry the girl and promised "to support, respect and care for this girl as a husband should, and he agrees that this ceremony may be solemnized now or as soon as might be possible." These two offers he says were made "without admitting his guilt of the charge herein and protesting his innocence but realizing the gravity of the charge and the uncertainty of the outcome." He admits he told the girl to hide upstairs in his house at a time her father was searching for her and that he told the father she was not there. We are satisfied there is ample evidence to support the verdict of the jury.

The last ground urged for a new trial is the failure of the trial court to grant a new trial on the ground of "newly discovered evidence." This application is based solely upon five affidavits; two by the defendant, one each from his brother Richard Young, Louie Crepeau, and Merle Smith. They all relate to a proposed alibi on the part of the defendant. The prosecuting witness had testified that on the 17th day of July, 1926, the defendant in company with one Paul Krubeck came to her home between nine and nine thirty o'clock in the evening; that Krubeck got out of the car; that the defendant invited her to go for a drive; and that while out driving and away out on the prairie he had pulled her out of the car and had intercourse with her. The defendant denied being at her home that evening at all and Krubeck denied being with the defendant at the home of the prosecutrix that evening. All this appeared at the trial and was before the jury. The trial commenced on the sixth day of December, 1926. The case went to the jury on the 8th day of December, 1926. On the 17th day of December, 1926, the defendant swears that he then recalled that "on Saturday night about the middle of July, 1926" he was "in Pingree from about 7 : 30 until about 10 : 30 P. M., but that due to the worry and strain of the trial this did not occur to him until after the trial," that if he had had a bill of particulars he might have recalled this statement. In his second affidavit he swears that it was now brought to his attention "that there was a card game at the shack of Joe Caven at Pingree on Saturday night; that he recalls such game; that he does not recall for certain that it was after the dance at Arrowwood Lake

but does recall that Merle Smith and Louie Crepeau and he were together in this game," and that "he believes this was the night after the dance at Arrowwood lake." The prosecuting witness had said the offense took place the night after such a dance. The affidavit of Richard Young, the brother, is to the effect that Merle Smith "recalled that on the next night (after the dance at Arrowwood lake) Saturday night, about the 17th day of July, 1926, he played cards with Max Young and Louie Crepeau at the shack of Joe Caven." Louie Crepeau swears Richard Young told him of a card game and asked him if he remembered it, that he told that he remembered such game; "that he recalled it was in July before the harvesting season and that it was Saturday night." Merle Smith testified that he attended the dance at Arrowwood lake and this card game took place on the night following the dance at Arrowwood Lake, being a Saturday night. This is the sum and substance of all of the testimony. The court was correct in denying the new trial. It was not "newly discovered evidence." If anything, it was merely "newly recalled" evidence. But there was nothing to show that this card game took place on the evening of July 17, 1926. There is nothing to indicate there had only been one dance at Arrowwood lake that summer and the nearest anyone came to even recalling the date was Louie Crepeau and Merle Smith did not even fix the month. He does say the card game took place in Pingree on a Saturday night following a dance at Arrowwood lake. In the trial of the case the prosecuting witness had testified that the night the defendant came to her home he had told her he had just come from Pingree and there saw her parents. She testified that her parents had left home to go to Pingree. The defendant knew this and heard this testimony and knew what she said. How she knew he had been in Pingree that night, and he now claims he was there, unless someone told her or unless she happened to make an accidental shot is not explained. These affidavits are merely impeaching affidavits to contradict the prosecuting witness and to sustain defendant's alibi. He testified at the trial he was not there, consequently he must have been elsewhere. Purely impeaching affidavits do not furnish grounds for a new trial. State v. Albertson, 20 N. D. 512, 517, 128 N. W. 1122. From the time of his arrest in July he knew he was being charged with having intercourse with complaining witness on July 17 and he had plenty of time be-

tween then and his trial in December to find out where he was that night. Doubtless his conviction stimulated his memory and the memories of his friends who sat with him in the card game, but if he could recollect this card game so keenly in December four or five months after his arrest, it is rather strange he did not recall it at the time of his arrest ten days or two weeks after the occurrence. The evidence was not newly discovered as to himself. If her reference to the dance is the remark which reopened the flood gates of memory he should have asked for a continuance to get the men who were his companions. The state's attorney had testified defendant said he "had intercourse with her out on the prairie," therefore at the trial he knew just where the state claimed he was. The motion for a new trial was properly denied.

After an exhaustive examination we find the defendant has had a fair and impartial trial and the judgment is therefore affirmed.

BIRBZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.